IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00835-KLM

MELISSA CLARKE CRICHTON, and
CRISTY HEDGPETH, individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

AUGUSTUS ENERGY RESOURCES, L.L.C.,

      Defendant.

_____

# ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on Plaintiffs' **Motion for Class Certification** [#41][1] (the "Motion"). Plaintiffs filed a Memorandum in Support of Plaintiffs' Motion for Class Certification [#42] (the "Brief"), Defendant filed an Opposition to Motion for Class Certification [#50] (the "Response"), and Plaintiffs filed a Reply Memorandum in Further Support of Plaintiffs' Motion for Class Certification [#51] (the "Reply"). The Court has reviewed the Motion and Brief, Response, Reply, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#41] is **GRANTED**.[2]

_____

[1] "[#41]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[2] The Court notes that Defendant requests a hearing in its Response. [#50] at 27. However, the parties' briefing is sufficient for resolving the Motion, and the Court therefore concludes that a hearing is not necessary. *See* D.C.COLO.LCivR 7.1(d) ("Nothing in this rule precludes a judicial officer from ruling on a motion at any time after it is filed.").

# I. Background

Plaintiffs and their proposed Class members are royalty owners who own interests in wells that produce natural gas in Colorado. *Brief* [#42] at 2. The putative Class includes royalty owners whose right to receive royalties arises pursuant to leases or overriding royalty agreements. *Id.* Subject to these leases and agreements, Defendant extracts, conditions, and markets the gas from the wells. *Id.* at 5. After being extracted from the wells, the gas undergoes several processes before reaching the interstate pipelines for sale, including gathering, compression, dehydration, and transportation (collectively referred to as "post-production" activities). *Id.* In exchange for the right to extract and sell the natural gas, Defendant pays a portion of the proceeds or market value of the gas to the royalty owners. *Id.* at 3.

On March 12, 2015, Plaintiffs filed their Class Action Complaint and Demand for Jury Trial in the Yuma County District Court in Colorado. [#3]. On March 30, 2015, Plaintiffs filed an Amended Class Action Complaint and Demand for Jury Trial. [#5]. On April 20, 2015, Defendant removed the action to this Court. *See Notice of Removal* [#31].

Plaintiffs allege that Defendant breached its contractual obligations to the putative Class by underpaying the royalties owed on natural gas which was produced by the Defendant from December 2009 to the present. *Brief* [#42] at 1. Specifically, Plaintiffs contend that Defendant has improperly deducted post-production costs from the selling price of the natural gas, and failed to pay them and the proposed Class members royalties on gas used by Defendant in the compression, dehydration, and gathering process. *Id.* at 11.

# II. Legal Standard

A district court possesses broad discretion in determining whether a suit should proceed as a class action. *Fink v. Nat. Savings and Trust Co.*, 772 F.2d 951, 960 (D.C.Cir. 1985). The party seeking certification must establish the four threshold requirements set forth in Federal Rule of Civil Procedure 23(a): "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

If Plaintiffs prove they have met these threshold requirements, they must then demonstrate that the action falls within one of the three categories set forth in Rule 23(b). *Shook v. El Paso County*, 386 F.3d 963, 971 (10th Cir. 2004). Here, Plaintiffs seek certification pursuant to Rule 23(b)(3), which requires a showing that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

"When addressing class certification, the district court must undertake a 'rigorous analysis' to satisfy itself that the prerequisites of Rule 23 . . . are met." *CGC Holding Co., LLC v. Broad and Cassel*, 773 F.3d 1076, 1086 (10th Cir. 2014). Although the court "must accept the substantive allegations of the complaint as true, . . . it need not blindly rely on conclusory allegations which parrot Rule 23 and may consider the legal and factual issues presented by plaintiff's complaints." *Shook*, 386 F.3d at 968 (internal citations and quotation marks omitted). In deciding whether certification is appropriate, doubts should be resolved in favor of certification. *Rhodes v. Nat'l Collection Sys., Inc.*, 317 F.R.D. 579, 582 (D. Colo.

2016) (citing *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir.1968) ("[I]f there is to be an error made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require.")).

### III.  Analysis

**A.    Proposed Class**

"Although not mentioned specifically in Rule 23 itself, a prerequisite to class certification is an appropriate class definition."  *Rhodes v. Nat'l Collection Sys., Inc.*, 317 F.R.D. 579, 582 (D. Colo. 2016), reconsideration denied, No. 15-CV-02049-REB-STV, 2016 WL 7377125 (D. Colo. Dec. 16, 2016) (citation and quotations omitted).  A class is sufficiently definite when it is administratively feasible for a court to ascertain whether an individual belongs in the class.  *Id.*  Plaintiffs propose the following class:

> All persons and entities (the "Class"), including their respective successors and assigns, to whom Augustus Energy has paid royalties or overriding royalties (collectively, "Royalties") on Natural Gas, including Natural Gas liquids extracted therefrom after it is severed from the wellhead ("Natural Gas"), produced by Augustus Energy from wells located in the state of Colorado since December 2009 pursuant to leases, overriding royalty agreements or other agreements which do not expressly authorize the deduction of costs incurred to market such gas after it is severed from the wellhead in the calculation of royalties ("Royalty Agreements").
>
> The defined Class excludes: (a) the United States; (b) the state of Colorado; (c) any person or entity who has been a working interest owner in a well located in Colorado and on whose behalf Augustus Energy paid royalties on Natural Gas produced by Augustus Energy in Colorado since December 2009; and (d) Augustus Energy and its affiliates, and its respective employees, officers and directors.

*Motion* [#41] at 2.

Defendant argues that a proposed Class based on payment of royalties where the

leases or agreements in which deduction of post-production costs are *not expressly authorized* is not feasible because Plaintiffs have included "many agreements in their proposed class with language authorizing a variety of express and implied deductions." *Response* [#50] at 11.   Defendant's argument is inapposite for several reasons.   First, Plaintiffs have already identified the lease and overriding royalty agreement language that they allege meets the Class definition.   *See* [#42-1] at 4-14.   Second, Plaintiffs have also prepared a list of approximately 700 putative Class members whose agreements fall into the identified categories.   *See* [#48].   Third, the fact that some of the agreements may contain varying language does not mean that the Class is not sufficiently definite, but rather indicates that some of the royalty owners may simply be excluded from the Class.   *See Anderson v. Merit Energy Co.*, Nos. 07-cv-00916-LTB, 07-cv-01025-LTB-BNB, 2008 WL 2484187, at *3 (D. Colo. June 19, 2008) (rejecting defendant's argument that identifying which royalty agreements fell within the class definition of "agreements that do not expressly authorize the deduction of the costs incurred to market . . . natural gas after it is severed from the wellhead" would require a legal decision on the merits regarding liability, and granting class certification).   Indeed, the fact that Defendant purportedly has been able to identify agreements that do not meet the proposed Class definition indicates that whether an agreement meets the Class definition is easily ascertainable.[3]

_____

[3]   Additionally, Defendant argues that the putative Class definition should exclude royalty owners who have settled their claims, those who have not been charged post-production expenses, and those are working interest owners with the obligation to pay royalties. *Response* [#50] at 26. First, Plaintiffs state that they have conferred with Defendant and have confirmed that the royalty owners who have previously entered into an agreement specifying how royalties are to be paid will be excluded from the Class. *Reply* [#51] at 25. The Court finds that the other two groups identified here by Defendant for exclusion are already excluded from the putative Class definition.

The Court finds and concludes that the Class is sufficiently definite and ascertainable, and now turns to the requirements of Rule 23.

**B.     Rule 23(a)**

Federal Rule of Civil Procedure 23(a) provides four requirements that Plaintiffs must meet for class certification: numerosity, commonality, typicality, and adequacy of representation.

**1.     Numerosity**

In order to show that a class is sufficiently numerous, plaintiffs must "establish that the class is so numerous as to make joinder impracticable." *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006) (internal quotation omitted).  Plaintiffs have identified more than 700 members of the proposed Class.  *Brief* [#42] at 9; *List of Proposed Class Members* [#48].  The hundreds of Class members would make joinder impracticable. Furthermore, Defendant does not challenge the numerosity requirement. *Response* [#50] at 10 n.5.  Therefore, the Court finds that the numerosity requirement is satisfied.

**2.     Commonality**

Rule 23(a)(2) requires that there be questions of law or fact common to the class. An issue must be "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Menocal v. Geo Group, Inc.*, No. 14-cv-02887-JLK, 2017 WL 880882, at *3 (D. Colo. Feb. 27, 2017) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  Nonetheless, the mere fact that questions particular to each member of the class remain after the common questions of the defendant's liability have

been resolved do not preclude a finding that the commonality requirement has been satisfied. *Diagle v. Shell Oil Co.*, 133 F.R.D. 600, 603 (D. Colo.1990).

Plaintiffs have identified several questions of law and fact that the proposed Class members have in common, including the following: (1) whether Defendant was required to pay royalties based on the price that Defendant received for selling the gas, (2) whether Defendant breached its obligations to putative Class members by deducting various costs from the sales price when calculating royalty payments, (3) whether Defendant breached its obligations to putative Class members by using a netback approach (where deductions were made for gas used or lost in operations by the gatherers), and (4) the amount of damages sustained by putative Class members due to Defendant's common method of calculating such royalties. *Brief* [#42] at 11.  At the heart of these inquiries is the issue of when the gas becomes marketable,[4] because the Defendant bears the post-production costs if necessary to get the gas into a marketable condition and location, but the parties share the post-production costs if the gas is marketable at the wellhead. *Rogers*, 29 P.3d at 906 (stating that "determination of marketability is a question of fact" after which "the allocation of all costs can properly be determined").  Defendant does not dispute the principle that marketability determines how costs are allocated.  Plaintiffs represent that they will prove through common evidence that the commercial market where Defendant sells the gas to its customers is at the interconnect to the long distance pipelines. *Reply* [#51] at 15.  Thus, based on Plaintiffs' representation, the question of when gas becomes

---

[4] "Gas is marketable when it is in the physical condition such that it is acceptable to be bought and sold in a commercial marketplace, and in the location of a commercial marketplace." *Rogers*, 29 P.3d at 906.

marketable is a question common to the putative Class.

Defendant's primary argument is that the royalty and overriding royalty agreements contain varying language, which defeats commonality.  *Response* [#50] at 12.  However, Colorado courts have granted motions for class certification even where royalty agreements contain varying language.  *See Anderson*, 2008 WL 2484187, at *3 ("[V]ariations in the language of royalty payment provisions are immaterial provided that there is no express lease provision addressing the allocation of post-production costs.") (citing *Rogers*, 29 P.3d at 897).[5]  Defendant's argument is based on two Tenth Circuit cases that Defendant avers support its position that variations in lease language destroy commonality.  However, these cases are inapposite.  In *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, the Tenth Circuit determined that the plaintiff had not met its burden to demonstrate commonality because there were "roughly 430 leases which have yet to be examined by the [plaintiff] or the district court."  725 F.3d 1213, 1219 (10th Cir. 2013) ("On remand, the [plaintiff] could, for example, create a chart classifying lease types, and although we express no opinion as to the merits, the district court could decide that no lease type negates the [implied duty to market].").  Similarly, in *Chieftain Royalty Co. v. XTO Energy, Inc.*, the Tenth Circuit remanded the case because the district court had not engaged in any substantive analysis of the lease terms and approximately 13,568 leases had not been examined by the parties or the district court.  528 F. App'x 938, 942-43 (10th Cir. 2013).  Thus, both of these cases were remanded to the district court not on the merits, but for the district court to consider in the first instance whether the varying lease language affected

---

[5]  Plaintiffs have also submitted various unpublished orders from Colorado state courts granting class certification where there are variances in lease language.

commonality.

Because varying lease language does not necessarily bar a finding of commonality, the Court now considers the specific language at issue here.  Defendant argues that Plaintiffs have failed to show commonality because the agreements are not all silent as to allocation of post-production costs, and because the questions that Plaintiffs allege are common to the proposed Class cannot be answered on a class-wide basis.  *Response* [#50] at 16-17.

Plaintiffs concede that the royalty agreements are not uniform, and in fact have provided the Court with a chart and explanation of the 38 types of provisions governing the payment of royalties.  *Categorization of Class Member Leases* [#42-1] at 4-14.  Plaintiffs argue that the differences in the royalty agreements are immaterial because they share one critical element in common – that none of the agreements contain express language authorizing the deduction of costs incurred to render the gas marketable.  *Reply* [#51] at 2.  Thus, Plaintiffs contend that all of the agreements are subject to the implied covenant to market as set forth in *Rogers v. Westerman Farm Co.*, which obligates the lessee (Defendant) to incur those costs necessary to get the gas to a marketable condition and location. 29 P.3d 887, 906 (Colo. 2001).  On the Court's review of the Plaintiffs' lease chart and the parties' briefing, it appears beyond dispute that the leases do not expressly provide for allocation of post-production costs.

Defendant asserts that the language of several types of agreements does not fit the proposed Class definition because it provides that royalties are to be paid only on: (1) gas "sold" or "marketed," (2) the "actual amount received" by Defendant, or (3) the "net proceeds" realized by Defendant.  *Response* [#50] at 3-9.  *Rogers* held that "absent

*express lease provisions* addressing allocation of costs, the lessee's duty to market requires that the lessee bears the expenses incurred in obtaining a marketable product." *Rogers*, 29 P.3d at 897 (emphasis added).  First, Colorado courts have found that leases stating that royalties or overriding royalties are paid only on "gas sold" are silent as to post-production costs.  *See, e.g.*, *Rogers*, 29 P.3d at 897 (holding that the implied duty to market applied because the language "one-eighth of the proceeds from the sale of gas" did not specifically allocate post-production costs); *Savage v. Williams Prod. RMT Co.*, 140 P.3d 67, 70 (Colo. App. 2005) (finding that the language "one-eighth of the proceeds from the sale of gas" did not supersede the implied duty to market).  Similarly, the phrase "gas marketed" does not contain an express provision allocating post-production costs, *see Rogers*, 29 P.3d at 898, nor does a provision stating that royalties are to be determined as a fraction "of the actual amount received by the lessee," *see Anderson*, 2008 WL 2484187, at *5 (rejecting argument that royalty agreements providing for payment based on "actual proceeds" are not subject to the implied duty to market).

Regarding the provision that royalties are to be paid on the "net proceeds" realized by Defendant on the sale of gas, the defendant in *Savage* argued that the term "proceeds" meant that the royalty owner must bear all post-production costs. *Savage*, 140 P.3d at 69 (emphasis added).  However, the court concluded "that nothing in this language describes the allocation of costs, if any, between the parties.  Nor does the language describe where royalties were to be calculated or specify any expenses to which [the royalty owner] is subject."  *Id.* at 70.  Similarly, the "net proceeds" language in the present case does not specifically allocate post-production costs.  *See Rogers*, 29 P.3d at 897; *see also Miller v. Encana Oil & Gas, Inc.*, No. 05CV2753 (D.C., City and Cty. of Denver, May 30, 2006)

(unpublished) [#42-21] at 10 ("The use of the word 'net' in these royalty provisions cannot be construed as an express allocation of post-production costs . . . ."). Hence, Defendant's arguments about the variant language appear to have been addressed and overruled by applicable precedent, at least to the extent necessary for determining the commonality question.

With respect to Defendant's argument that leases permitting free use of gas for compression, dehydration and gathering are not silent with respect to post-production costs, Plaintiffs argue – and the Court agrees – that these leases remain silent with respect to the other post-production costs. *Response* [#50] at 17; *Reply* [#51] at 8. Plaintiffs represent that their accounting expert "was easily able to ascertain [the fuel used and unaccounted for] deduction from the other expressly stated deductions" and will be easily able to calculate this single deduction in his damage report for trial. *Id.* The fact that damages may be subject to differing calculations if liability is found does not negate the existence of common questions of law or fact. *Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 385 (D. Colo. 1993) ("No matter how individualized the issue of damages may be, these issues may be reserved for individual treatment with the question of liability tried as a class action.") (quoting *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988)). Therefore, the Court concludes that the varying language of the agreements permitting use of gas by the lessee does not defeat commonality.[6]

Accordingly, the Court is satisfied that the issues presented are common and relevant, and that Plaintiffs have therefore met the commonality requirement of Rule 23(a).

---

[6] Additionally, the Court notes that a class may be divided into subclasses at a later time if deemed appropriate. *See* Fed. R. Civ. P. 23(c)(5).

### 3.    Typicality

Rule 23(a)(3) requires that the claims or defenses of the class representatives be typical of the claims or defenses of the class.  The positions of the class representatives need not be identical to those of the other class members so long as there is a sufficient nexus between the claims of the class representatives and the common questions of law or fact which unite the class.  *Clark v. State Farm Mut. Auto. Ins. Co.*, 245 F.R.D. 478, 484 (D. Colo. 2007).  Typicality is not normally a difficult hurdle so long as the claims of the named class representatives and the other class members are based on the same legal or remedial theory.  *Id.*

Plaintiffs argue that the typicality requirement is satisfied because all of the proposed Class members have been damaged by Defendant's uniform practice of imposing post-production costs on the proposed Class members, resulting in payment of lower royalties than they are entitled to.  *Brief* [#42] at 12.  Defendant challenges the typicality of the Plaintiffs' claims because of the differences in the royalty agreement language, arguing that "Plaintiffs have no interest in asserting arguments about contract language absent from the lease in which they have an interest."  *Response* [#50] at 19.  To the contrary, it is the language "absent from the lease" that demonstrates typicality in this case.  Specifically, Plaintiffs argue that their lease is silent as to the allocation of post-production costs, which, as the Court discussed at length in the previous section, is also the case for the proposed Class members.

Because Plaintiffs have asserted claims based on the same essential facts and theory of liability as those of the proposed Class members, the typicality requirement of Rule 23(a)(3) is satisfied.  *See Clark*, 245 F.R.D. at 484.

### 4.    Fair and Adequate Representation

Rule 23(a)(4) requires that the class representatives fairly and adequately protect the interests of the class. This requirement entails the resolution of two questions:  "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Rutter & Willbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). Plaintiffs bear the initial burden of demonstrating facts to support a finding that they will adequately protect the interests of the class.  *Schwartz v. Celestial Seasonings, Inc.*, 178 F.R.D. 545, 552 (D.Colo. 1998).   Once Plaintiffs have made a prima facie showing of adequate representation, the burden shifts to Defendant. *Id.*

First, Plaintiffs' counsel has considerable experience litigating similar natural gas royalty underpayment cases, and the Court is satisfied that counsel has shown that they are fully capable of prosecuting this class action.  Furthermore, Defendant does not contest the adequacy of Plaintiffs' counsel.  *Response* [#50] at 20 n.7.  Thus, the disputed issue under Rule 23(a)(4) is whether Plaintiffs can adequately represent the interests of the proposed class.

Plaintiffs argue that they have no conflicts of interest that interfere with their ability to serve as class representatives, and that they have and will continue to be vigorous participants in this litigation.  *Brief* [#42] at 13; *Decl. of Cristy Hedgpeth* [#42-9] ¶¶ 8-9; *Decl. of Melissa Clarke Crichton* [#42-10] ¶¶ 8-9.   Defendant's sole argument is that Plaintiffs cannot adequately represent the interests of the proposed Class based on the differences in the royalty agreements.  *Response* [#50] at 20.  This argument is essentially

the same as the argument presented with respect to the previous Rule 23(a)(3) requirements, and it is rejected for the same reason. That is, notwithstanding any differences that there may be in the language of the agreements, Plaintiffs are relying on the same essential facts and legal theory to support their claims as the members of the proposed class. Accordingly, the Court concludes that the adequacy of representation requirement is satisfied.

## C.    Rule 23(b)

Of the additional requirements listed in Rule 23(b), Plaintiffs rely on Rule 23(b)(3), which requires predominance of questions of law or fact common to the class and superiority of the class action method. The conditions of predominance and superiority were added "to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (quoting Fed. R. Civ. P. 23 advisory committee note).

With respect to predominance, this "inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 615. "[W]hen one or more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper under Rule 23(b)(3) even though other important matters have to be tried separately." *Cook*, 151 F.R.D. at 388. Defendant's argument regarding predominance raises the same points as its argument regarding commonality. *See Response* [#50] at 21-25. Specifically, Defendant argues that the varying language in the agreements overwhelms any issues that predominate. *Id.* at

21. Thus, this inquiry overlaps substantially with the "commonality" requirement, which the Court addressed at length above. And similar to the commonality requirement, the Court finds that Plaintiffs have identified issues that predominate and are common to the proposed Class regardless of the varying language in the agreements.

The second requirement for class certification under Rule 23(b)(3) is that a class action be "superior to other available methods fairly and efficiently adjudicating the controversy." In making this superiority determination, relevant factors include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing the class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D). On weighing these factors, the Court finds that Plaintiffs have demonstrated the superiority of class certification. Here, the proposed Class members do not appear to have an interest in individually controlling the litigation, given that Plaintiffs represent that none of the other Class members have initiated their own actions in any court. Additionally, based on the calculations of potential damages, it does not appear that it would be worthwhile for the Class members to individually litigate their own claims.

## IV. Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the Motion [#41] is **GRANTED**.

IT IS FURTHER **ORDERED** that the following class is certified in this case:

> All persons and entities (the "Class"), including their respective

successors and assigns, to whom Augustus Energy has paid royalties or overriding royalties (collectively, "Royalties") on Natural Gas, including Natural Gas liquids extracted therefrom after it is severed from the wellhead ("Natural Gas"), produced by Augustus Energy from wells located in the state of Colorado since December 2009 pursuant to leases, overriding royalty agreements or other agreements which do not expressly authorize the deduction of costs incurred to market such gas after it is severed from the wellhead in the calculation of royalties ("Royalty Agreements").

The defined Class excludes: (a) the United States; (b) the state of Colorado; (c) any person or entity who has been a working interest owner in a well located in Colorado and on whose behalf Augustus Energy paid royalties on Natural Gas produced by Augustus Energy in Colorado since December 2009; and (d) Augustus Energy and its affiliates, and its respective employees, officers and directors.

IT IS FURTHER **ORDERED** that Plaintiffs' counsel of record are **APPOINTED** as counsel for the class.

IT IS FURTHER **ORDERED** that **on or before April 28, 2017**, Plaintiffs shall file a proposed form of notice to members of the Class and a proposal for directing notice to the members of the Class, in compliance with Fed. R. Civ. P. 23(c)(2)(B).  The deadlines for filing a response and any reply shall be governed by D.C.COLO.LCivR 7.1(d).

IT IS FURTHER **ORDERED** that the parties shall submit a discovery plan regarding any remaining merits and damages discovery **on or before April 14, 2017**.

Dated:  March 31, 2017

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

-16-