IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00835-KLM

MELISSA CLARKE CRICHTON, and
CRISTY HEDGPETH, individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

AUGUSTUS ENERGY RESOURCES, L.L.C.,

    Defendant.
_____

# ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on Defendant's **Motion to Dismiss** [#60][1] (the "Motion"). Plaintiffs filed a Memorandum in Opposition to the Motion [#62] (the "Response"), and Defendant filed a Reply [#67]. Plaintiffs thereafter filed a Supplement to the Memorandum in Opposition to the Motion [#68] (the "Supplement"), to which Defendant filed a Response to the Supplement [#69] (the "Supplement Response"). The Court has reviewed all briefing on the Motion [#60], the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#60] is **DENIED**.[2]

---

[1] "[#60]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[2] The case has been referred to the undersigned for all purposes pursuant to D.C.COLO.LCivR 72.2(d) and 28 U.S.C. § 636(c). *See Order of Reference* [#22].

## I. Background

Plaintiffs Melissa Clarke Crichton and Cristy Hedgpeth represent a class of similarly situated persons pursuant to Fed. R. Civ. P. 23(b)(3), and filed this action in state court on March 12, 2015. *Compl.* [#3] at 1. Defendant Augustus Energy, LLC is an oil and gas production company that has paid Plaintiffs royalties on natural gas produced from wells in Yuma County, Colorado. *Motion* [#60] at 2. Plaintiffs allege that Defendant has improperly deducted costs from royalty payments due to Plaintiffs. *Id.* Specifically, Plaintiffs contend that Defendant improperly imposed costs between the time that the gas was produced from the wellhead and when the gas was rendered marketable. *Id.* at 3. Therefore, Plaintiffs assert, Defendant has breached implied provisions of the royalty agreement by "failing to properly calculate and pay royalties to the Plaintiffs and the Class . . . ." *Second Am. Compl.* [#5] at 7. Plaintiffs seek an award of prejudgment interest on all royalty underpayments arising from Defendant's alleged improper method of royalty calculation. *Id.* at 10.

The issue presented in the Motion [#60] is purely legal. Defendant seeks dismissal of all claims pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction on the basis that Plaintiffs failed to exhaust administrative remedies before the Colorado Oil and Gas Conservation Commission (the "COGCC") prior to filing this action. *Motion* [#60] at 1. In support of the Motion [#60], Defendant contends that because the underlying issue of whether Defendant properly calculated and paid royalties is a question of fact, the COGCC possessed jurisdiction over the claim and, therefore, Plaintiffs were required to exhaust all administrative remedies. *Id.* at 2. Thus, Defendant contends, this Court lacks subject matter jurisdiction over the dispute pursuant to Fed. R. Civ. P. 12(b)(1) and all

claims must be dismissed as a matter of law. *Id.* In the Response [#62], Plaintiffs argue that the underlying dispute is rooted in contract and, therefore, the COGCC lacks jurisdiction over the dispute. *Response* at 1. Due to the COGCC's lack of jurisdiction over the dispute, Plaintiffs assert, exhaustion before the COGCC was not required and their claims must not be dismissed. *Id.*

## II. Analysis

### A. Fed. R. Civ. P. 12(b)(1) Motion to Dismiss

Pursuant to Fed. R. Civ. P. 12(b)(1), a party may assert a lack of subject matter jurisdiction by motion as a defense. Before a federal court may assert subject matter jurisdiction over a claim, a claimant must first exhaust all administrative remedies. *Minor v. Gunja*, No. CIVA05CV01382PSFCBS, 2006 WL 1795128, at *6 (D. Colo. June 27, 2006). "To survive a Rule 12(b)(1) motion, [p]laintiff must demonstrate total exhaustion. That is, if each and every claim in the [c]omplaint is not exhausted through the administrative remedy process, the entire [c]omplaint should be dismissed." *Id.* (citing *Ross v. Cty. of Bernalillo*, 365 F.3d 1181, 1184 (10th Cir. 2004)). In the present case, it is undisputed that Plaintiffs did not assert their claims before the COGCC prior to filing this action. *See Motion* [#60] at 1; *Response* [#62] at 4. Therefore, if the COGCC possessed jurisdiction over Plaintiffs' claims, as Defendant contends, Plaintiffs' Second Amended Complaint [#5] must be dismissed for failure to exhaust.

### B. COGCC Jurisdiction

Jurisdiction to adjudicate certain disputes is conferred upon the COGCC by the Colorado Oil and Gas Conservation Act. *See* Colo. Rev. Stat. § 34–60–105. With respect

to disputes arising from a contract, Colo. Rev. Stat. § 34–60–118.5(5.5) states:

> Before hearing the merits of any proceeding regarding payment of proceeds pursuant to this section, the oil and gas conservation commission shall determine whether a bona fide dispute exists regarding the interpretation of a contract defining the rights and obligations of the payor and payee. If the commission finds that such a dispute exists, the commission shall decline jurisdiction over the dispute and the parties may seek resolution of the matter in district court.

Thus, the COGCC is precluded from exercising jurisdiction over any controversy involving a bona fide dispute regarding contract interpretation. *Id.*

In support of the Motion [#60], Defendant contends that "[d]etermining the proper allocation of post-production costs does not require interpretation of the contract, but instead requires a factual analysis about where production first became marketable." *Reply* [#67] at 4. Defendant relies principally on a Colorado Supreme Court case, asserting that "[u]nder *Rogers v. Westerman Farm Co.*, questions regarding marketability are issues of fact . . . . Thus, in this case, determining the proper allocation of post-production costs does not require the interpretation of disputed contractual terms . . . ." *Motion* [#60] at 9; *Rogers v. Westerman Farm Co.*, 29 P.3d 887 (Colo. 2001). In opposition, Plaintiffs contend that *Grynberg v. Colorado Oil and Gas Conservation Commission*, 7 P.3d 1060 (Colo. App. 1999), "expressly holds that royalty owners who have a post-production cost contract dispute with an oil and gas producer . . . are not required to exhaust their administrative remedies with [the COGCC]." *Response* [#62] at 2.

In *Rogers*, gas was produced by an oil and gas developer from approximately two hundred wells, and was sold either at the well site or at a connection to an interstate pipeline. *Id.* at 891. The leases, referring to point of marketability, stated that royalties would be paid based on gas values "at the well" or "at the mouth of the well." *Rogers*, 29

P.3d at 887. The court addressed whether these express terms in the oil and gas leases were sufficiently clear to guide the cost allocations between parties. *Id.* The court concluded that "[a]bsent express lease provisions addressing allocation of costs, the lessee's duty to market requires that the lessee bear the expenses incurred in obtaining a marketable product." *Id.* at 906. The court further held that "the determination of marketability is a question of fact." *Id.* at 905. Defendant relies principally upon this "question of fact" language to contend that, because point of marketability is a determination of fact, this is not a contract dispute for purposes of Colo. Rev. Stat. § 34–60–118.5(5.5), and is therefore within the jurisdiction of the COGCC. *Motion* [#60] at 10.

Plaintiffs, by contrast, rely on *Grynberg* to support their contention that the COGCC lacked jurisdiction because this is fundamentally a contract dispute. In *Grynberg*, a dispute arose between oil and gas developers and royalty owners of an interest in oil and gas property. *Grynberg,* 7 P.3d at 1062. The royalty owners commenced an action to recover royalties from the oil and gas developers and filed an action with the COGCC pursuant to Colo. Rev. Stat. § 34–60–118.5 in order to have the COGCC determine the amount of royalties owed to the royalty owners. *Id.* The COGCC determined, however, that "while the pertinent statute authorized [the COGCC] to ensure timely payment to those legally entitled to such payments, it lacked jurisdiction to adjudicate private disputes related to the legality of specific deductions, which . . . would require [an interpretation of the instruments that created the royalty interests]." *Id.* The *Grynberg* court further held that "the [COGCC]

does not have jurisdiction to interpret any royalty agreement to determine the propriety of disputed post-production deductions." *Id.* at 1063.

The leases at issue in this matter are silent regarding post-wellhead cost allocations. *Order Granting Motion for Class Certification* [#56] at 9. Pursuant to Colorado law, an "implied covenant to market" applies to all leases that are silent with respect to the allocation of production costs. *Gagnon v. Merit Energy Co. LLC*, No. 14-cv-832-WJM-KLM, 2015 WL 9489609 (D. Colo. Dec. 30, 2015) (quoting *Rogers v. Westerman Farm Co.*, 29 P.3d 887, 902 (Colo. 2001)). Functionally, an implied covenant to market "obligates the lessee to incur those post-production costs necessary to place gas in a condition acceptable for market." *Rogers*, 29 P.3d at 902. However, the "condition acceptable for market" is not universally defined under Colorado law, and varies among leases. *Gagnon*, 14-cv-832-WJM-KLM, at 4. For each lease, "[t]he determination of whether gas is marketable is a question of fact." *Rogers*, 29 P.3d at 906. Indeed, the Tenth Circuit has recognized that point of marketability can vary between all gas produced at all wells. *Gagnon*, 14-cv-832-WJM-KLM, at 4 (citing *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 725 F.3d 1213, 1219 (10th Cir. 2013)). Therefore, because Plaintiffs' leases are silent regarding post-production wellhead deductions, the leases at issue in this action contain implied covenants to market and the point of marketability of the gas produced by Defendant is a question of fact with respect to each specific lease.

Defendant asserts that *Grynberg* does not provide a sufficient basis to defeat the Motion [#60]. *Motion* [#60] at 6; *Reply* [#67] at 5. Specifically, Defendant states that "*Grynberg* did not hold that the COGCC lacks jurisdiction to find facts and apply them to

undisputed terms of a contract."[3]  *Id.*  The Court agrees with this proposition.  Indeed, the *Grynberg* court merely held that "[u]nder [Colo. Rev. Stat. § 34–60–118.5] . . . the [COGCC] does not have jurisdiction to interpret any royalty agreement to determine the propriety of disputed post-production deductions." *Grynberg v. Colo. Oil and Gas Conservation Com'n*, 7 P.3d 1060 (Colo. App. 1999).  However, the Court disagrees with Defendant's apparent extension of the proposition, which concludes that the COGCC must exercise jurisdiction over all disputes that involve factual inquiries.  The Court further disagrees that the terms of the lease are undisputed in this controversy, as this matter centers on a contested interpretation of the implied contractual term "point of marketability," which arises under the implied covenant to market within the disputed leases.

Although the point of marketability is a question of fact pursuant to *Rogers*, this

---

[3] Defendant cites a number of cases seeking to distinguish *Grynberg* from the present factual circumstances.  First, Defendant cites *Grant Bros. Ranch, LLC v. Antero Res. Piceance Corp.*, No. 15CA2063, 2016 WL 7009139 (Colo. App. Dec. 1, 2016) as supportive of its position that the COGCC possesses jurisdiction over this dispute.  *Reply* [#67] at 6.  However, *Grant Bros.* dealt with a complete absence of a contract, and therefore the court rejected claims that COGCC lacked jurisdiction per *Grynberg*. *Grant Bros.*, No. 15CA2063, 2016 WL 7009139 at *5 (Colo. App. Dec. 1, 2016) ("Here, there is no contract; thus, there is no contract dispute.").  However, the implied contractual terms present in this case, although implied, are nonetheless contractual terms.  *See Evergreen Highlands Ass'n v. West*, 73 P.3d 1, 3 (Colo. 2003).  Defendant next cites *Lindauer v. Williams Prod. RMT Co.*, 318 P.3d 378 (Colo. App. 2016).  *Reply* [#67] at 6-7.  *Lindauer* held that an operator's reasonable costs of transporting gas to downstream markets were deductible from royalty payments.  *Lindauer*, 318 P.3d at 378.  However, *Lindauer* did not address COGCC jurisdiction with respect to determinations of marketability, but instead addressed additional costs beyond an undisputed point of marketability. It is therefore not inconsistent with *Grynberg* with respect to COGCC jurisdiction. Defendant next cites *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138 (10th Cir. 2000), as supporting COGCC jurisdiction.  *Reply* [#67] at 7.  However, *Atlantic Richfield* is entirely consistent with *Grynberg*, as it noted that "[Colo. Rev. Stat.§ 34–60–118.5] demonstrates the General Assembly's intent to grant the [COGCC] jurisdiction only over actions for the timely payment of proceeds and not over disputes with respect to the legal entitlements to proceeds under the terms of a specific royalty agreement." *Atlantic Richfield*, 226 F.3d at 1157.

dispute is contractual in nature. Defendant's duty to market arises from the implied duty to market that applies in this matter, as well as in all other oil and gas leases in Colorado. *See Rogers*, 29 P.3d at 902. The Restatement (3d) of Property (Servitudes) provides that "[a] 'covenant' is a contract, an agreement, a promise, or a species of express contract. The word 'covenant' means to enter into a formal agreement, to bind onself in contract, and to make a stipulation . . . ." RESTATEMENT (THIRD) OF PROP: SERVITUDES § 1.1 (AM. LAW. INST. 1999).[4] Courts must construe covenants as a whole based upon their underlying purpose, but will enforce a covenant as written if clear on its face." *Evergreen Highlands Ass'n v. West*, 73 P.3d 1, 3 (Colo. 2003). Here, the parties dispute the point of marketability of the gas, which arises as a result of the implied covenant to market. At the very least, "point of marketability" is an undefined concept relating to obligations arising under the oil and gas lease between Plaintiffs and Defendant. Defendant seemingly argues that because the point of marketability is a question of fact, that this dispute must be removed, per se, from the realm of contract. However, contractual disputes often center on questions of fact. *See Lake Durango Water Co., Inc. v. Pub. Utils. Com'n of State of Colo.*, 67 P.3d 12 (Colo. 2003) ("Whether a party has performed its obligations under a contract or breached is a question of fact."); *see also May v. Interstate Moving & Storage Co.*, 739 F.2d 521 (10th Cir. 1984) ("Once it has been determined that a contract is

---

[4] The Colorado Supreme Court, United States District Court for the District of Colorado, and the Tenth Circuit Court of Appeals rely on The Restatement (3d) of Property. *See Lobato v. Taylor*, 71 P.3d 938 (Colo. 2002); *see also Fairhurst Family Ass'n, LLC v. United States Forest Serv., Dep't. of Agric.*, 172 F. Supp. 2d 1228 (D. Colo. 2001); *In re Luna*, 406 F.3d 1192 (10th Cir. 2005).

ambiguous and that its construction depends on extrinsic facts and circumstances, the terms of the contract become questions of fact and are for the trier of fact . . . ."); *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909 (Colo. 1996) ("Once a contract is adjudged to be ambiguous, meaning of the ambiguous term is a question of fact to be determined in the same manner . . . as other questions of fact."). Thus, although *Rogers* held that marketability is a question of fact, the factual inquiry regarding when a gas product became "marketable" is fundamentally an interpretation of an undefined contractual term affecting each party's obligations under the disputed lease agreement. Because the COGCC may not resolve bona fide disputes regarding contract interpretation pursuant to Colo. Rev. Stat. § 34–60–118.5(5.5), and this dispute arises out of an undefined contractual term, the Court concludes that the COGCC lacked jurisdiction over the claim and Plaintiffs were not required to exhaust COGCC remedies prior to filing a judicial action.

## C.     "Futility" of Exhaustion

Lastly, the Court turns to Defendant's argument that exhaustion is nonetheless required because the COGCC did not make the initial determination that this dispute is beyond its jurisdiction. Defendant asserts that "[t]he COGCC must make the determination in the first instance regarding the existence of a bona fide [contract] dispute." *Motion* [#60] at 8. Defendant supports this proposition by highlighting language in Colo. Rev. Stat. § 34–60–118.5(5.5), stating that "[b]efore hearing the merits of any proceeding regarding payments of proceeds pursuant to this section, the oil and gas conservation commission shall determine whether a bona fide dispute exists regarding the interpretation of a contract . . . . " *Id.* (quoting Colo. Rev. Stat. § 34–60–118.5(5.5)). Defendant argues, therefore,

that Plaintiffs must now exhaust any claims before the COGCC, because the COGCC did not make the preliminary determination that this dispute arose under contract principles pursuant to Colo. Rev. Stat. § 34–60–118.5(5.5). Plaintiffs, by contrast, assert that bringing their claims to the COGCC is not necessary because their efforts would have been futile.

Although Colo. Rev. Stat. § 34–60–118.5(5.5) states that the COGCC must make a determination of whether a bona fide contract dispute exists prior to exercising jurisdiction over a dispute, the statute does not require that disputes may be filed in district court *only* after a COGCC determination that the dispute is contractual in nature. The Court therefore disagrees with Defendant's interpretation of Colo. Rev. Stat. § 34–60–118.5(5.5) and finds that Plaintiffs properly filed this action in this Court without first seeking a COGCC determination. Furthermore, as Plaintiffs assert in the Response [#62], exhaustion before the COGCC would likely have been futile. *See Response* [#62] at 17. Pursuant to Colorado law, futility is an exception to the exhaustion doctrine. *See State v. Golden's Concrete Co.*, 962 P.2d 919, 923 (Colo. 1998). The exception states that exhaustion is unnecessary when "it is clear beyond a reasonable doubt that further administrative review by the agency would be futile because the agency will not provide the relief requested." *City & Cty. of Denver v. United Air Lines, Inc.*, 8 P.3d 1206, 1214 (Colo. 2000) (quoting *Golden's*, 962 P.2d at 923). Exhaustion before the COGCC was likely futile "beyond a reasonable doubt" because, as discussed above, this matter concerns a contractual dispute. Futility is further supported by a May 2017 COGCC administrative order, which was included as Exhibit 17 attached to Plaintiffs' Supplement [#68]. *See In the Matter of the Payment of Proceeds from the Production of Oil and Gas as Established by Section 34-*

*60-118.5, C.R.S., Wattenberg Field, Weld County, Colorado,* Docket No. 170300096 (2017). In the order, the COGCC declined jurisdiction over a dispute regarding whether a gas producer had sold gas without paying royalties to royalty interest holder. *Id.* In support of its position, the COGCC cited to *Grynberg v. Colorado Oil and Gas Conservation Commission*, 7 P.3d 1060 (Colo. App. 1999), and concluded that the question regarding lack of payment was rooted in contract and therefore beyond the jurisdiction of the COGCC. *Id.* Accordingly, exhaustion by Plaintiffs was likely futile "beyond a reasonable doubt," as case law, as well as recent COGCC administrative orders, support Plaintiffs' position that this dispute is rooted in contract and is beyond the jurisdiction of the COGCC.

### III. Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the Motion [#60] is **DENIED**.

Dated: October 26, 2017

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge